# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF MISSISSIPPI
# WESTERN DIVISION

| | |
|---|---|
| TINA WOOD | PLAINTIFF |
| VERSUS | № 3:06-CV-152-SAA |
| UNION COUNTY, MISSISSIPPI | DEFENDANT |

## MEMORANDUM OPINION ON
## DEFENDANT'S MOTION {№23} FOR SUMMARY JUDGMENT

The defendant, Union County, Mississippi, argues that it is entitled to judgment as a matter of law under FED. R. CIV. P. 56 because there is no genuine issue of material fact about whether the County violated the plaintiff's constitutional rights when it terminated her employment as Justice Court Clerk. The court agrees. For the following reasons, the motion is **GRANTED**.[1]

## I. FACTUAL AND PROCEDURAL HISTORY

Tina Wood worked for Union County, Mississippi until 2006, when the Board of Supervisors voted to terminate her tenure as Union County Justice Court Clerk. The Board's decision was based on a litany of emails among Wood and her subordinate, deputy clerks. In those emails, the group expressed dissatisfaction with a co-worker, Denise Owen, whom the group perceived as unwilling to perform her share of duties and inordinately interested in the affairs of others.. Additionally, Wood, Amber Williams, and Amanda Hill exchanged observations about Owen's family

---

[1] Under 28 U.S.C. § 636(c), the parties consented to the jurisdiction of a United States Magistrate Judge to enter judgment in this case. *See* Order of Referral {№18}.

members and stature in the Union County community. The emails are pointed, to say the least, and, in some instances, outright mean.[2]

The email correspondence spanned a roughly two-year period, ending during summer 2006. At that point, Denise Owen — or an associate of Owen — discovered some of the emails and gave copies to Union County Supervisor Danny Jordan. After reading them, Jordan contacted Union County Administrator Terry Johnson, asking Johnson to investigate the emails and the general state of affairs in the justice court clerk's office. An investigation yielded a substantial number of emails (enough to occupy over 120 pages of this court's record).

Wood, Amber Williams, and Amanda Hill were summoned to a meeting of the Board of Supervisors, which — along with Administrator Johnson and the board's attorney — questioned Wood individually, and Williams and Hill together, about the emails. Wood admitted to authoring them, standing by them as honest, truth-in-fact statements. After the initial investigation and subsequent board meeting, the Board of Supervisors decided to demote Wood to the county's E911 center, with a commensurate drop in salary. Wood declined to accept the position. Consequently, the Board of Supervisors terminated her tenure as justice court clerk effective July 10, 2006.

Woods filed this case against Union County, Mississippi under 42 U.S.C. § 1983, alleging that the county fired her in retaliation for expressing her First Amendment right to free speech and denied her procedural due process in terminating her. Also, she brought state-law, public policy claims.

---

[2] The court sees no purpose in recounting the emails verbatim since the exact content, as explained below, has no bearing on deciding the defendant's motion for summary judgment.

## II. SUMMARY JUDGMENT STANDARD

On a motion for summary judgment, the movant has the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986) ("the burden on the moving party may be discharged by 'showing' . . . that there is an absence of evidence to support the non-moving party's case.").

Under FED. R. CIV. P. 56(e), the burden shifts to the non-movant to "go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp.*, 477 U.S. at 324. That burden is not discharged by "mere allegations or denials." FED. R. CIV. P. 56(e). All legitimate factual inferences must be made in favor of the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Rule 56(c) mandates entering summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. Before finding that no genuine issue for trial exists, the court must first be satisfied that no reasonable trier of fact could find for the non-movant. *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587, (1986).

## III. ANALYSIS

Wood presents a First Amendment retaliation claim, a procedural due process claim, and state law claims.

### FIRST AMENDMENT RETALIATION CLAIM

To succeed on her First Amendment retaliation claim, Tina Wood must show that: (1) she suffered an adverse employment decision; (2) her speech involved a

matter of public concern; (3) her interest in commenting on matters of public concern outweighs Union County's interest in promoting efficiency; and, (4) her speech motivated the adverse employment decision. *Stotter v. Univ. of Texas at San Antonio*, № 06-50305, slip op. at 15 (5th Cir. Nov. 27, 2007); *Whiting v. Univ. of Southern Mississippi*, 451 F.3d 339, 350 (5th Cir. 2006). The court's attention, for summary judgment purposes, will focus on the second element: whether Tina Wood's email correspondence involved a matter of public concern.

### A. Fifth Circuit Tests for Determining Whether Speech Addresses a Matter of Public Concern

The Fifth Circuit Court of Appeals has employed two tests, sometimes independently and sometimes conjunctively, to determine whether speech addresses a matter of public concern. In the first test, a court evaluates the content, form, and context of a given statement. *See, e.g., Bradshaw v. Pittsburgh Indep. Sch. Dist.*, 207 F.3d 814, 818 (5th Cir. 2000). In the second, focus shifts to whether Wood "[spoke] primarily in [her] role as a citizen rather than as an employee addressing matters only of personal concern." *Stotter*, slip op. at 16 (internal citation omitted). Also in the fray are instances of "mixed speech", *i.e.*, where "the employee speaks on a matter of public concern but also has a personal interest as well." *Stotter*, slip op. at 16.

The Circuit has conflicting opinions about what constitutes mixed speech. Some cases propose "remov[ing] from First Amendment protection . . . that speech that is made *only* as an employee and le[aving] intact protection for speech that is made both as an employee and as a citizen." *Stotter*, slip op. at 17; *Wilson v. UT Health Ctr.*, 973 D.2d 1263, 1269 (5th Cir. 1992); *Kennedy v. Tangipohoa Parish Library Bd. of Control*, 224 F.3d 359, 370 n.13 (5th Cir. 2000); *Chavez v. Brownsville Indep. Sch. Dist.*, 135 F. App'x 664, 670 (5th Cir. 2005) (unpublished). Although the court has noted that "[the] mere insertion of a scintilla of speech re-

garding a matter of public concern would make a federal case out of a wholly private matter fueled by private, non-public interests," *Teague v. City of Flower Mound*, 179 F.3d 377, 382 (5th Cir. 1999), in its most recent mixed speech case, the court concluded: "We agree that under *Connick* [*v. Myers*, 461 U.S. 138 (1983)], even a mere scintilla of speech regarding a matter of public concern is sufficient to treat the entire communication as mixed speech." *Stotter*, slip op. at 17. Thus, this court will likewise analyze Wood's compendium of emails, searching for a "mere scintilla of speech regarding a matter of public concern," to determine whether Wood's speech was "mixed speech."

### B.   *Wood's Speech was Mixed Speech*

Wood's emails, though containing mostly *ad hominem* attacks, do touch on (albeit tangentially) matters of public concern insofar as they address whether a county employee performs her job tasks. Therefore, under Fifth Circuit precedent, Wood's speech was mixed speech.

To analyze mixed speech, the Circuit has referred to different tests — *i.e.*, the content-form-context test and the citizen-employee test. The distinction between these tests, however, appears to be artificial. *See, e.g., Stotter*, slip op. at 18 n.4 ("In fact, we have been unable to find a single case in which the application of these varying tests brought the panel to different conclusions."). Based on its review, the court will apply the content-form-context test to determine whether Wood's speech was protected.[3]

### C.   *Under the Content-Form-Context Test, Wood's Speech is Not Protected*

"Speech rises to the level of public concern when an individual speaks primarily as a citizen rather than as an employee." *Bradshaw*, 207 F.3d at 816. "In

---

[3]The court's analysis under the "citizen-employee" test would, in any event, mirror its analysis under the "content-form-context" test.

cases involving mixed speech, [a court is] bound to consider the *Connick* factors of content, context, and form, and determine whether the speech is public or private based on these factors." *Teague*, 179 F.3d at 3823

### i. **Content**.

The emails represent an open dialogue among Wood and two of her deputy clerks about Denise Owen's work performance, community standing, and personal life. Except for oblique references to Owen's poor job performance or a possibility of her stealing money of the office snack fund jar, *ad hominem* attacks predominate the content of these emails. No references to county employment policy, to ideals of civic performance, or to the fiscal soundness of Owen's continued employment are discussed with any remarkable frequency. Only by stretching a personal gripe about a county's employees job performance through a very generously contrived inference may one conclude that the content was anything but a matter of personal concern.[4]

### ii. **Form**

"Informal" aptly describes the form of these emails. In no appreciable way could one construe these emails as anything but informal, conversational emails. For example, the emails contain no trappings of a traditional letter. Rather, they are the sort of correspondence one authors on the fly to a close, personal friend about dismal working conditions.

Most significantly, Wood sent these emails to her *subordinates* (the deputy clerks). If Wood wished to "blow the whistle" on fiscal waste in the form of continuing to employ Owen, presumably that whistle blowing would have traveled **up** the chain-of-command, not down. More plausibly, Wood was complaining to her friends

---

[4] As previously mentioned, though, the emails are mixed speech because a scintilla of information about a matter of public concern was present. That scintilla, standing alone, cannot survive under the content-form-context test.

who happened to deputy clerks. She acted like an angry employee, not a concerned citizen, or even as a supervisor..

### iii. Context

The emails were authored during working hours among Union County employees, in response to stimuli in that work environment, specifically responsive to Ms. Owen's actions throughout a typical work day. Although Wood now claims that these emails represent a matter of public concern — insofar as Owen did not competently discharge her duties as a deputy clerk — "[r]etrospective embellishment cannot transform personal grievances into matters of public concern." *Dodds v. Childers*, 933 F.2d 271, 274 (5th Cir. 1991).

Based on the content, form, and context of the emails among Woods and her deputy clerks, the court concludes that her speech was authored while Woods was acting primarily as a Union County employee, not as a public citizen. Accordingly, as a matter of law, she cannot establish a First Amendment retaliation claim.

## PROCEDURAL DUE PROCESS CLAIM

"[A] liberty interest is infringed, and the right to notice and an opportunity to clear one's name arises, only when the employee is 'discharged in a manner that creates a false and defamatory impression about him and this stigmatizes him and forecloses him from other employment opportunities.'" *Bledsoe v. City of Horn Lake*, 449 F.3d 650, 653 (5th Cir. 2006) (quoting *White v. Thomas*, 660 F.2d 680, 684 (5th Cir. 1981)).

To prove a procedural due process violation,[5] Wood must show: (1) she was discharged; (2) stigmatizing charges were made against her in connection with the discharge; (3) the charges were false; (4) she was not provided notice or an opportunity to be heard prior to the discharge; (5) the charges were made public; (6) she requested a hearing to clear her name; and (7) the employer denied the request. *Id.*

Wood was dismissed as Union County Justice Court Clerk for having engaged in her email correspondence with two deputy clerks. She admitted in her complaint, *see* {№ 1, at para. 7}, and in her deposition, *see* {№ 23-2, at 8}, that she authored the emails and, in her view, they were truthful. As she said in deposition, referring to the emails: "There's one thing that I told [the Board of Supervisors] that day, I wrote those [emails], they were the truth and I haven't lied about them" {№ 23-2, at p. 8}. The sole reason for her termination that Union County gave — which Wood does not dispute — is her email correspondence. Regardless of the stigmatizing nature of that charge, it was true, as she admitted. And, therefore, her procedural due process claim fails as a matter of law.[6]

### MISSISSIPPI STATE LAW CLAIMS

Although she included Mississippi state law claims in her complaint, Wood admitted in her response to the summary judgment motion that she "is not able to establish a public policy claim or a violation of the Union County Handbook under

---

[5] Besides showing a "liberty interest", one may exhibit a cognizable property interest. *Bryan v. City of Madison*, 213 F.3d 267, 274-75 (5th Cir. 2000). Property interests flow from independent sources, such as state law. *Id.* In her brief, Wood "admits that under Mississippi substantive law she was an at will [*sic*] employee and has no . . . property [interest] in her job" {№ 28, at p. 14}.

[6] In her response, Wood cites *Harris v. City of Auburn*, 27 F.3d 1284 (7th Cir. 1994), where the Seventh Circuit's analysis for a procedural due process claim based on a liberty interest is possibly less stringent than the Fifth Circuit's. Although that may be true, this court must follow controlling, Fifth Circuit precedent. That precedent requires a showing that an employer's charge was in fact false. *Bledsoe*, 449 F.3d at 653.

existing Mississippi law and, as such, confesses this portion of [the summary judgment motion]" {№ 28, at p. 17}. Likewise, the court concludes that Mississippi law admits no remedy for a public policy violation under these facts. *See, e.g., McArn v. Allied-Bruce-Terminix Co.*, 626 So. 2d 603 (Miss. 1993).

## IV. CONCLUSION

The motion for summary judgment is **GRANTED**. A separate order consistent with this memorandum opinion shall issue concurrently.

**SO ORDERED**, this the 17th day of December, 2007.

/S/ *S. Allan Alexander*
UNITED STATES MAGISTRATE JUDGE
